**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Facet Technology Corp., | Civil No. 08-300 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| Tele Atlas North America, Inc., | |
| Defendant. | |

_____

Donald R. McNeil, Jr., Esq., Sean O. Skrypek, Esq., and Stephen F. Buterin, Esq., Coleman, Hull & Van Vliet, PLLP, counsel for Plaintiff.

Michael G. Taylor, Esq. and Arthur G. Boylan, Esq., Leonard, Street & Deinard, PA, and David Eiseman, Esq. and Billie D. Salinas, Esq., Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, counsel for Defendant.

_____

This matter came before the Court on April 29, 2008, pursuant to a Motion to Dismiss brought by Tele Atlas North America, Inc. ("Tele Atlas"). For the reasons set forth below, the Court grants in part and denies in part the motion.

**BACKGROUND**

Facet Technology Corp. ("Facet"), a Minnesota corporation, delivers precision mapping and property imagery content to its consumers. Tele Atlas, a California and New Hampshire corporation, is engaged in the mapping business. In 2006, the parties began discussing a potential business relationship sometime and entered into a Letter of

Intent dated November 7, 2006 ("LOI").  The LOI contained an exclusivity provision in section 14 that provides, in relevant part:

> [i]f the parties fail to sign a mutually satisfactory Agreement on or before the termination of this Letter of Intent, (1) if it is [Tele Atlas] which fails to sign then, or (2) if it is FACET which fails to sign then at [Tele Atlas's] option: [Tele Atlas] and FACET shall enter into an agreement with one another, on mutually acceptable terms and conditions, providing that FACET deliver to [Tele Atlas], and [Tele Atlas] shall license from FACET, a minimum of $1,000,000.00 of FACET archival imagery in 2007 to enable [Tele Atlas] to create and sublicense derivative products.  This imagery will be from FACET's most current archive of 2006 or 2007 urban coverage and currency of geographies determined by the [Tele Atlas].  The rate per mile of this imagery shall be no more than $20.00 and include all imagery, metadata and preprocessed vectors.

(Doc. No. 24 at 8.)[1]

Under an amendment to the LOI dated February 1, 2007, the termination date for the LOI was February 15, 2007.  (*Id*. at 11.)    After the parties did not enter into an agreement by that date, Facet approached Tele Atlas about licensing $1 million of archival imagery pursuant to section 14 of the LOI.  Tele Atlas refused.  Facet then commenced a two-count action in Hennepin County Court, alleging claims for breach of contract and promissory estoppel.  Tele Atlas removed the action to this Court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332.   Subsequently, it filed a motion to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6).

---

[1]     Although Facet's Complaint references an "Exhibit A," which is the amendment to the LOI, it did not attach that amendment when it filed its action in Hennepin County Court. As a result, Tele Atlas correctly attached only what was filed in Hennepin County Court to its removal notice.  Because a court can consider matters embraced by the pleadings at the motion-to-dismiss stage, *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), the Court asked the parties to submit the LOI and amendment to complete its record.

## DISCUSSION

I.   **Standard of Review**

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 1964–65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id*. at 1965.

II.   **Breach of Contract**

In Count I of the Complaint, Facet alleges that Tele Atlas breached section 14 of the LOI when it failed to enter into a licensing agreement with Facet. (Compl. ¶¶ 10-11.) The parties agree that Minnesota law governs both counts. To prevail on a claim for

breach of contract under Minnesota law, a plaintiff must demonstrate: (1) the formation of a contract; (2) performance by the plaintiff of any conditions precedent; (3) a breach of the contract by the defendant; and (4) damages. *See Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974).

A letter of intent is generally not considered a contract; rather, it is considered an agreement to negotiate in the future. *Hansen v. Phillips Beverage Co.*, 487 N.W.2d 925, 927 (Minn. Ct. App. 1992). "Agreements to agree" are usually not enforceable because "they provide neither a basis for determining the existence of a breach nor for giving an appropriate remedy." *Richie Co., LLP v. Lyndon Ins. Group, Inc.*, 316 F.3d 758, 760-61 (8th Cir. 2003) (analyzing Minnesota law). "[W]here the agreement evidences nothing more than an intention to negotiate in the future," it is unenforceable. *Hansen*, 487 N.W.2d at 927. A letter of intent, however, can be binding "if the parties manifest intent to be bound by the instrument, and the instrument contains all the essential terms necessary for a binding agreement." *J & W Enters. v. TM Mktg, Inc.*, No. C7-97-196, 1997 WL 343121, at *1 (Minn. Ct. App. June 24, 1997) (citing *Metro Office Parks Co. v. Control Data Corp.*, 205 N.W.2d 121, 125 ( Minn. 1973)).

Tele Atlas asserts that Count I fails to state a claim because section 14 of the LOI is not a valid contract but rather an unenforceable agreement to agree. Tele Atlas contends that section 14 fails to identify critical terms necessary for contract formation such as exclusivity, scope or term of use of the license, the geography covered by the images to be licensed, indemnification, warranties, or limitations of liability.

Facet responds that section 16 of the LOI illustrates that the parties unequivocally agreed to be contractually bound by the licensing agreement contained in section 14. Entitled "Prior Discussions and Expiration," section 16 provides, in relevant part:

> The provisions outlined in this Letter of Intent are not intended by the parties nor are to be construed or otherwise claimed by the Parties as legally binding or legally enforceable by either of the Parties; and any transaction between the Parties is subject satisfactory completion of due diligence and negotiation and execution of a mutually definitive agreement and related agreements by the Parties hereto.  Notwithstanding the foregoing, *the parties expressly intend that the respective obligations of the parties described* in the Expenses of the Transactions, *Exclusivity (and imagery license in the absence of Closing),* Confidentiality, Due Diligence, and Covenants Prior to Closing *sections of this Letter of Intent shall be legally enforceable and binding upon each*, respectively, when this letter of Intent is executed and delivered to Tele Atlas.

(Doc. No. 24 at 9 (emphasis added).)  Facet asserts that the LOI must be interpreted in such a way to give all of its provisions meaning, including section 16, and that this case must be distinguished from other agreements to agree that do not contain language similar to that found in section 16.  It further states that all of the fundamental terms of the parties' agreement are contained in section 14, specifically the $1 million price and the subject matter of the 2006-2007 urban coverage and currency of geographies. According to Facet, any other missing terms are merely ancillary terms that are not essential to contract formation.

The Court agrees with Tele Atlas.  Facet's characterization of section 14 as a licensing agreement does not make it so.  Rather, the language of section 14 establishes that it contemplates future action by the parties to enter into a license agreement as a condition subsequent in the event that the parties' negotiations fail.  Specifically, if the

5

parties fail to enter into a purchase agreement, then they agreed to subsequently enter into a licensing agreement "on mutually acceptable terms and conditions." (Doc. No. 24 at 8.) Enforceable contracts under Minnesota law "require reasonable certainty about the intent of the parties regarding the fundamental terms of the contract." *Jensen v. Taco John's Int'l, Inc.*, 110 F.3d 525, 527 (8th Cir. 1997) (citing Minnesota law). Here section 14 lacks reasonable certainty about some of the material terms necessary for a licensing agreement, such as the term and scope of use of the license. Notwithstanding section 16, without certainty on these essential terms of the parties' agreement, section 14 evidences only the intent to negotiate in the future. Given this, Count I fails and must be dismissed because section 14 of the LOI does not contain an enforceable agreement.

Without making a formal motion under or attaching a draft Amended Complaint, Facet asked the Court in its opposition memorandum for leave to amend Count I. The determination of whether to allow a party to amend its pleadings is left to the discretion of the district courts. *Humphreys v. Roche Biomed. Lab., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993). Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15, it is settled law that district courts have the power to deny leave to amend if the proposed changes would not save the complaint. *Weimer v. Amen*, 870 F.2d 1400, 1407 (8th Cir. 1989). Here, it is not possible for Facet to state a claim upon which relief can be granted because no amendment could overcome the deficiencies discussed above in section 14. Accordingly, Count I will be dismissed with prejudice.

### III.   Promissory Estoppel

In Count II, Facet alleges a claim for promissory estoppel based on its allegations that Tele Atlas promised to license $1 million of imagery from Facet and that Facet relied on that promise to its detriment. (Compl. ¶¶ 13-15.) Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (internal quotations and citations omitted). To recover under a claim for promissory estoppel, a plaintiff must demonstrate (1) the existence of a clear and definite promise; (2) that the promisor must have intended to induce reliance, and the promissee must have relied to its detriment; and (3) the promise must be enforced to prevent injustice. *Id.*

Relying in part on *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945 (8th Cir. 2007) and *Jensen*, Tele Atlas asserts that Count II should be dismissed because Facet cannot establish the first element of its promissory estoppel claim, namely the existence of a clear and definite promise capable of enforcement. As with the breach-of-contract claim, Tele Atlas contends that section 14 of the LOI is simply an agreement to agree in the future to mutually agreeable terms and conditions concerning the licensing of Facet's imagery. Facet responds that it has alleged all three elements necessary to support a claim for promissory estoppel.

In *Dodge*, the purpose of the letter of intent was to express the intent of the lessor and lessee to work in good faith towards an agreement, and no specific terms of an agreement were outlined in the letter of intent. *Dodge*, 501 F.3d at 949, 955 (analyzing Nebraska law and concluding that there was no clear and definite promise capable of

7

supporting a promissory estoppel claim). In *Jensen*, the plaintiff admitted in a deposition that he knew that his franchise agreement was contingent on whether he secured approved sites for his restaurants, paid franchise fees, attended training school, and signed a written agreement. *Jensen,* 110 F.3d at 527-28 (analyzing Minnesota law and concluding that there was no clear and definite promise capable of supporting a promissory estoppel claim).

In contrast, here, assuming the allegations in the Complaint to be true and construing all reasonable references from those allegations in the light most favorable to Facet, the Court concludes that section 14 of the LOI could be construed as containing a clear and definite promise capable of enforcement—namely Tele Atlas's promise to enter into a $1 million license agreement with Facet. Accordingly, Tele Atlas's motion with respect to Count II is denied.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED THAT:**

1. Tele Atlas North America, Inc.'s Motion to Dismiss (Doc. No. 7) is **GRANTED IN PART** as to Count I and **DENIED IN PART** as to Count II.

2. Count I is hereby **DISMISSED WITH PREJUDICE.**

Dated:  June 12, 2008                s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court